# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| PECAN VILLAGE TX 2016, LP,<br>SHADY ACRE GA 2016, LLC,<br>YELLOW ROSE TX 2017, LP,<br>DRUID OAKS GA 2017, LLC, and<br>WESTWOOD GA 2017, LLC,<br><br>Plaintiffs/Counterclaim<br>Defendants,<br><br>v.<br><br>SW MH HOLDINGS, LLC,<br>Defendant/Counterclaim Plaintiff. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

C.A. No. N20C-06-040
PRW CCLD

Submitted:  November 10, 2020
Decided:  February 3, 2021

## MEMORANDUM OPINION AND ORDER

*Upon Defendant SW MH Holdings, LLC's Motion for Judgment on the Pleadings,*
**DENIED.**

Chad J. Thoms, Esquire, Kaan Ekiner, Esquire, WHITEFORD TAYLOR PRESTON, LLP, Wilmington, Delaware; Stephen M. Faraci, Sr., Esquire, Patrick D. Houston, Esquire, WHITEFORD TAYLOR PRESTON, LLP, Richmond, Virginia, *Attorneys for Plaintiffs/ Counterclaim Defendants Pecan Village TX 2016, LP, Shady Acres GA 2016, LLC, Yellow Rose TX 2017, LP, Druid Oaks GA 2017, LLC, and Westwood GA 2017, LLC.*

Joseph Grey, Esquire, CROSS & SIMON, LLC, Wilmington, Delaware; Gavin J. Rooney, Esquire, Craig Dashiell, Esquire, LOWENSTEIN SANDLER, LLP, New York, New York, *Attorneys for Defendant/ Counterclaim Plaintiff SW MH Holdings, LLC.*

**WALLACE, J.**

Plaintiffs Pecan Village TX 2016, LP, Shady Acres GA 2016, LLC, Yellow Rose TX 2017, LP, Druid Oaks GA 2017, LLC, Westwood GA 2017, LLC (collectively "Sellers") bring this action against Defendant SW MH Holdings, LLC ("SW"), asking the Court to clarify a contractual dispute regarding the proper termination of an asset purchase agreement (the "APA") between them. The parties also request that the Court determine which party is entitled to the escrow deposit under the APA. Now before the Court is Defendant SW's Motion for Judgment on the Pleadings.

Because various material issues of fact preclude entry of judgment as a matter of law now, SW's motion is **DENIED.**

## I. FACTUAL BACKGROUND

On November 27, 2019, Sellers entered into the APA with SW, under which SW agreed to purchase, from Sellers, parcels of real property for $33,000,000.[1] The parties amended the APA several times through four written amendments beginning in January 2020 through February 2020.[2] Pursuant to the APA, SW deposited a total of $1,200,000 with Lincoln Land Services, LLC (the "Escrow Agent") as an agent

---

[1]    Compl., at ¶ 8, June 3, 2020 (D.I. 1); *see* Compl., Ex. A (Asset Purchase Agreement).

[2]    *Id*., at ¶ 10.  See generally Compl., Exs. B (January 10, 2020 Letter Amendment to APA), C (January 16, 2020 Second Amendment to APA), D (January 23, 2020 Third Amendment to APA), and E (February 6, 2020 Fourth Amendment to APA).

for First American Title Insurance Company (the "Title Company").[3]  The deposit was to be made within three business days after the execution of the APA and required an initial deposit of $1,000,000 and an additional deposit of $200,000 when SW elected to adjourn the Closing Date pursuant to Section 6.1 of the APA.[4]

Section 4 of the APA required that the Sellers convey good and marketable title to the subject Georgia and Texas properties and provided SW with the option to object to title based upon a title search or other diligence.[5]  On January 10 and 15, 2020, SW provided Sellers with letters providing notice of objections regarding various title matters ("Title Objection Letters") with respect to the Georgia and Texas properties pursuant to Section 4.2 of the APA.[6]  In these letters, SW objected to multi-million dollar liens on five of the properties and asked for them to be cured before the close of the transaction.[7]  On January 14 and 16, 2020, Sellers provided

---

[3]  *Id*. at ¶ 11;  Ex. A, at § 2.2.

[4]  *Id*.

[5]  Def.'s Mot. for J. on the Pleadings, at 5, August 7, 2020 (D.I. 10) ("Def.'s Mot.").

[6]  Def.'s Answer, at ¶ 10, July 6, 2020 (D.I. 4). *See* Def.'s Answer, Ex. D (January 15, 2020 Purchaser's Title Objection Letter) and Ex. E (January 10, 2020 Purchaser's Title Objection Letter).

[7]  *Id*.

letters in response to each of the objections informing SW that they agreed to cure the objections raised.[8] The parties set the Closing Date for March 23, 2020.[9]

On March 20, 2020, SW sent Sellers a written notice attempting to terminate the APA, explaining:

> [Sellers] have failed to cure, remove, or satisfy all Objections within five (5) business days prior to Closing date to the reasonable satisfaction of [SW] in accordance with Section 4.2 of the Agreement. [Seller] is in breach of Section 8.2 of the Agreement which obligates [Sellers] as a condition precedent to [SW]'s consummating Closing to have performed all undertakings and obligations and complied with all conditions required by the Agreement to be performed by [Sellers] on or before the Closing date. In accordance with Section 8 of the Agreement, [Sellers] are exercising its option to terminate the Agreement in whole (without prejudice to [SW]'s rights under Section 10.2 of the Agreement).[10]

Sellers responded on March 24, 2020, explaining that SW was in default of its obligations under the APA because "failure to tender performance on or before March 23, 2020, constitutes a default under the Purchase Agreement" and demanded it cure its default within ten (10) business days or Sellers would terminate the APA.[11] Sellers further claimed that such a default entitles Sellers to the escrow deposit

---

[8]  *Id.*

[9]  Compl., at ¶ 14.

[10]  *Id.* at ¶ 15; Def.'s Answer, at ¶ 15; Compl., Ex. F (March 20, 2020 Letter).

[11]  Compl., at ¶ 17; Compl., Ex. G (March 24, 2020 Letter).

because they fully tendered performance on the Closing Date as required by the APA.[12]

SW responded to the Sellrs on March 25, 2020, explaining that it had validly exercised its termination rights under the APA, excusing it from performance at Closing.[13] In this letter, SW claims that Sellers failed to "cure, remove, or satisfy all Objections . . . in accordance with Section 4.2 of the Agreement and, therefore, [Sellers] breached Section 8.2 of the Agreement and [SW] was entitled to terminate the Agreement in whole pursuant to Section 8 of the Agreement, which it did pursuant to such termination notice."[14]

On April 9, 2020, Sellers sent a letter to SW electing to terminate the APA, contending SW failed to properly do so as required by the APA.[15] Sellers explain that they provided SW with notice of default on March 24, 2020, and since it was not cured within ten (10) days of such notice, Sellers were free to terminate the Agreement.

---

[12] Compl., Ex. G.

[13] *Id*. at ¶ 18; Compl., Ex. H (March 25, 2020 Letter).

[14] Compl., Ex. H, at 1.

[15] *Id*. at ¶ 19; Compl., Ex. I (April 9, 2020 Letter); Def.'s Answer at ¶ 19.

## II. PARTIES' CONTENTIONS

### A. PROCEDURAL BACKGROUND

Sellers filed their Complaint in June 2020. Count I of their Complaint is a breach-of-contract claim asserting that SW failed to perform its obligations under the APA and, as a result, the Sellers suffered damages.[16] Sellers contend proper damages include recovery of the escrow deposit due to SW's default under the APA.[17]

In response to Sellers' breach-of-contract claim, SW contends that it properly terminated the APA because Seller failed to assure clear title and failed to satisfy the conditions precedent to SW's obligations to close.[18] Therefore, according to SW, Sellers breached their obligations and are barred from seeking a remedy under the APA.[19] SW seeks a judgment, by the Court, declaring that it is entitled to the immediate return of the escrow deposit.[20]

In its counterclaims, SW puts forth two counts. First, it contends that Sellers breached the APA by failing to cure SW's Objections no later than five days prior

---

[16] Compl., at ¶ 24.

[17] *Id*. at ¶ 25.

[18] *Id*.

[19] *Id*.

[20] *See* Def.'s Answer, at 16-17.

to closing and for refusing to authorize the Escrow Agent to return the escrow deposit to SW after its valid termination of the APA.[21] In its second count, SW requests declaratory judgment in its favor arguing that SW had not breached any of its obligations under the APA and had no obligation to close the transaction after Sellers failed to perform.[22]

SW immediately filed this present Motion for Judgment on the Pleadings and the Court has heard the parties' arguments thereon.

### B.     SW'S MOTION FOR JUDGMENT ON THE PLEADINGS

SW moves for judgment on the pleadings contending that sufficient key facts have been established to enter judgment in its favor. SW asserts that the language of the APA is clear and unambiguous and that it validly exercised the option to terminate the APA by serving Sellers with written notice.[23] SW suggests Section 4.2 is controlling because it allows SW to object to "any matters of title or surveys" by serving the Objections to the Sellers.[24] Next, SW interprets Section 8.2 of the APA to required Sellers to "cure, satisfy, or remove" the Title Objections, to SW's satisfaction, no later than five business days prior to the March 23, 2020 Closing—

---

[21]   Def.'s Countercl. at ¶ 25, 27.

[22]   *Id*. at ¶ 31.

[23]   Def.'s Mot. at 11.

[24]   *Id*. at 17.

-6-

that is, by March 16, 2020.[25] SW says that satisfying the Title Objections was a condition precedent to SW's obligation to close and since not met, there was no obligation to close the transaction.[26] According to SW the APA is clear and unambiguous and enough key facts have been established to resolve the entire dispute via this motion.

## III. STANDARD OF REVIEW

A party may move for judgment on the pleadings via Superior Court Civil Rule 12(c).[27] "The standard for a motion for judgment on the pleadings is 'almost identical' to the standard for a motion to dismiss."[28] In determining a Rule 12(c) motion, the Court assumes the truthfulness of all well-pleaded allegations of fact in the complaint,[29] takes those well-pleaded facts as admitted,[30] and then views those facts and draws inferences therefrom in the light most favorable to the non-moving party.[31] The Court accords a party opposing a Rule 12(c) motion the same benefits

---

[25] *Id.*, at 12.

[26] *Id.*, at 14-15.

[27] Del. Super. Ct. Civ. R. 12(c).

[28] *Silver Lake Office Plaza, LLC v. Lanard & Axilbund, Inc.*, 2014 WL 595378, at *6 (Del. Super. Ct. Jan. 17, 2014).

[29] *Almah LLC v. Lexington Ins. Co.*, 2016 WL 369576, at *4 (Del. Super. Ct. Jan. 27, 2016).

[30] *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993).

[31] *Id.*

as a party defending a dismissal motion under Rule 12(b)(6).[32]  A moving party is entitled to judgment on the pleadings only when there are no material issues of fact and the movant is entitled to judgment as a matter of law.[33]  The questions before this Court here are questions of fact and therefore are not ripe for decision.

## IV. DISCUSSION

SW argues that the unambiguous language of the APA establishes Sellers' breach by failing to cure the expressed Title Objections five days before the Closing Date, and therefore entitling SW to a return of the deposit.[34]  Alternatively, Sellers argue that their reasonable interpretation of the APA supports that SW failed to properly terminate the APA and that it should retain the escrow deposit as damages.[35]  Now, the Court must decide the proper avenue of termination as contemplated by the APA, and which party is entitled to the deposit.

When interpreting a contract, the Court will give priority to the parties' intentions as reflected in the four corners of the agreement.[36]  Delaware courts adopt

---

[32]  *See Ki-Poong Lee v. So*, 2016 WL 6806247, at *2 (Del. Super. Ct. Nov. 17, 2016).

[33]  *Desert Equities, Inc.*, 624 A.2d at 1205; *Alcoa World Alumina LLC v. Glencore Ltd.*, 2016 WL 521193, at *6 (Del. Super. Ct. Feb. 8, 2016).

[34]  Def.'s Mot. at 12.

[35]  Pls.' Opp'n. to Def.'s Mot. for J. on the Pleadings, at 11, September 14, 2020 (D.I. 19) ("Pls.' Opp'n.").

[36]  *Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 145 (Del. 2009).

the following well-established contract interpretation techniques:

> To determine what contractual parties intended, Delaware courts start with the text. When the contract is clear and unambiguous, we will give effect to the plain-meaning of the contract's terms and provisions, without resort to extrinsic evidence. To aid in the interpretation of the text's meaning, Delaware adheres to the objective theory of contracts, i.e. a contract's construction should be that which would be understood by an objective, reasonable third party. The contract must also be read as a whole, giving meaning to each term and avoiding an interpretation that would render any term mere surplusage. But general terms of the contract must yield to more specific terms.[37]

"[W]here reasonable minds could differ as to the contract's meaning, a factual dispute results and the fact-finder must consider admissible extrinsic evidence."[38] The Court will interpret clear and unambiguous terms according to their ordinary meaning.[39] A contract is not rendered ambiguous simply because the parties do not agree upon its proper construction.[40] "Rather, a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings."[41]

---

[37] *Sunline Commercial Carriers, Inc. v. CITGO Petroleum Corp.*, 206 A.3d 836, 846 (Del. 2019).

[38] *GMG Capital Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 779 (Del. 2012).

[39] *Id.*

[40] *Id.*

[41] *Rhone-Poulenc Basic Chems. Co. v. Am. Motorist Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992).

SW contends that proper termination starts with Section 4.2 of the APA, labeled "Title Examination," which states in relevant part:

> With respect to all Objections which Sellers have elected to cure, Sellers shall have until the date that is five (5) business days prior to the Closing date, excluding any extensions, to cure, remove or satisfy same at its sole cost and expense, to the reasonable satisfaction of Purchaser in its sole discretion.[42]

SW interprets this language to create a deadline of March 16, 2020, for Sellers to cure all objections made in its January 10 and 15 letters as that is five business days before the scheduled closing date of March 23, 2020.

SW also relies on Section 8.2 as support that satisfaction of the Objections was a condition precedent to Closing, and since not met, SW was free to terminate the APA. Section 8 is titled "Conditions Precedent to Purchaser's Consummating Closing" and specifically, 8.2 provides:

> There shall have been no breach of any of the representations or warranties made by Sellers herein, all such representations and warranties shall be true and correct as of the date of this Agreement and as of the Closing date, and each Seller shall have performed all undertakings and obligations and complied with all conditions required by this Agreement to be performed or complied with by each Seller on or before the Closing date.[43]

---

[42]  Compl., Ex. A at § 4.2

[43]  *Id*. at § 8.2.

Conversely, Sellers request that the Court consider the contract in its entirety and give priority to the parties' intentions.[44] Sellers posit that the Court should also consider the industry custom and suggest it is customary practice to satisfy outstanding liens at Closing.[45] Sellers contend that proper contractual interpretation begins with Section 4.3 which states that:

> [i]f any Seller fails or is unable or unwilling to cure, satisfy or remove any Objection or Supplemental Objection, then Purchaser shall have the option of extending the Closing date for up to five (5) business days and then the further option to: . . . (iii) if the applicable Seller has agreed to cure such Objection or Supplemental Objection and fails to do so by the Closing date, exercise its remedies under Section 10.2 hereof."[46]

If this provision applies, Sellers say, then SW is limited to remedies detailed in Section 10.2 which states:

> [i]f Sellers default in performing any of their obligations under this Agreement, or if any of Sellers' representations or warranties contained herein are not true in all material respects as of Closing, and such default continues for more than ten (10) business days after written notice from Purchaser, and provided that Purchaser is not in default hereunder, then Purchaser shall have the right either to: (i) terminate this Agreement by written notice to Sellers and receive from the Title Company a return of the Deposit whereupon this Agreement shall become null and void and of no further force or effect, except as expressly provided herein.[47]

---

[44]  Pls.' Opp'n., at 11, 15.

[45]  *Id*. at 15.

[46]  *Id*., Compl., Ex. A at § 4.3.

[47]  Compl., Ex. A, at § 10.2.

Sellers assert these sections of the APA should be applied instead of Sections 4.2 and 8.2 because they contain more specific language.[48] Sellers argue SW failed to conform with the proper termination procedure under the APA, which required SW to provide notice of the purported default and give Sellers ten days to cure the default.[49]

In Delaware, "judgment on the pleadings is a proper framework for enforcing unambiguous contracts because there is no need to resolve material disputes of fact."[50] But here there are two possible interpretations of the APA that create ambiguity that cannot properly be decided on a motion for judgment on the pleadings. At this point in the civil action, it is improper to decide competing contractual interpretations because it gives rise to a dispute of material fact. The APA, under the judgment pleading examination applicable here, ambiguous because there are "provisions in controversy that are reasonably or fairly susceptible of different interpretations or may have two or more different meanings."[51] Under the

---

[48]  Pls.' Opp'n., at 18.

[49]  *Id.* at 17.

[50]  *Aveta Inc. v. Bengoa*, 2008 WL 5255818, at *2 (Del. Ch. Dec. 11, 2008) (quoting *Lillis v. AT & T Corp.*, 904 A.2d 325, 330 (Del. Ch. 2006)).

[51]  *See Lillis v. AT & T Corp.*, 904 A.2d at 330 (quoting *Rhone-Poulenc Basic Chems.*, 616 A.2d at 1196).

APA, there are seemingly two different avenues that allow a party to terminate the contract and receive the deposit. But at this stage, it is unclear which provisions should apply. Thus, in these circumstances, the required contractual interpretation denatures to a question of fact irresolvable on this motion.

## V. CONCLUSION

For the foregoing reasons, SW's Motion for Judgment on the Pleadings must be **DENIED**.

**IT IS SO ORDERED.**

_____
**Paul R. Wallace, Judge**

Original to Prothonotary

cc:     All Counsel via File and Serve